BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ELAINE A. RYAN (*To be Admitted Pro Hac Vice*)
PATRICIA N. SYVERSON (CA SBN 203111)
LINDSEY M. GOMEZ-GRAY (*To be Admitted Pro Hac Vice*)
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
eryan@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone: (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Manfred P. Muecke (CA SBN 222893)
600 W. Broadway, Suite 900
San Diego, California 92101
mmuecke@bffb.com
Telephone: (619) 756-7748

STEWART M. WELTMAN, LLC
Stewart M. Weltman (*To be Admitted Pro Hac Vice*)
53 W. Jackson Suite 364
Chicago, IL 60604
sweltman@weltmanlawfirm.com
Telephone: (312) 588-5033
(Of Counsel Levin Fishbein Sedran & Berman)

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA KWAN, an Individual, On Behalf of Herself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SANMEDICA INTERNATIONAL, LLC, a Utah Limited Liability Company and SIERRA RESEARCH GROUP, LLC, a Utah Limited Liability Company,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1.  VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; and<br>2.  VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Serena Kwan brings this action on behalf of herself and all others similarly situated against Defendants SanMedica International, LLC and Sierra Research Group, LLC and states:

## NATURE OF ACTION

1.     Defendants manufacture, market, sell and/or distribute SeroVital, an over-the-counter amino acid supplement. Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, Defendants promise that SeroVital is clinically tested to boost human growth hormone ("HGH") by a mean of 682% for those who take it.  On the front of each and every SeroVital box, where consumers cannot miss it, Defendants represent that the Product is "CLINICALLY TESTED" to provide a "682% MEAN INCREASE IN HGH LEVELS", which is associated with "youthful skin integrity, lean musculature, elevated energy production, [and] adipose tissue distribution" (collectively, the "growth hormone benefit representations" or "HGH benefit representations").  Defendants' growth hormone benefit representations are false, misleading, and reasonably likely to deceive the public.  The clinically tested representation is false because the study Defendants cite to is clearly flawed and does not and cannot serve as the basis for the representations made by Defendants.  The other benefit representations are also false or misleading in that Defendants have no scientific support for any of these representations.

2.     Defendants have employed numerous methods to convey their uniform, deceptive growth hormone benefit representations to consumers, including the front of the Product's packaging and labeling where it cannot be missed by consumers.

3.     As a result of Defendants' deceptive growth hormone benefit representations, consumers – including Plaintiff and members of the proposed Class – have been deceived into purchasing what they believed to be a Product that was

shown in clinical testing to provide the represented HGH benefits, when the sole study on which the HGH benefit claim is based does not test for "youthful skin integrity, lean musculature, elevated energy production, [and] adipose tissue distribution" and is not credible scientific support for the "682% MEAN INCREASE IN HGH LEVELS" representation. Further, there is absolutely no support from any credible scientific source that any of the ingredients in SeroVital, alone or in combination, in the dosages found in the Product, provide the represented growth hormone benefits.

4. Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased SeroVital to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased SeroVital. Based on violations of state unfair competition laws (detailed below), Plaintiff seeks injunctive and restitutionary relief for consumers who purchased the Product.

**JURISDICTION AND VENUE**

5. This Court has original jurisdiction over Defendants and the claims set forth below pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds $5,000,000 and is a class action with greater than 100 class members, many of whom are citizens of a state different than Defendants.

6. This Court has personal jurisdiction over Defendants because Defendants are authorized to conduct and do business in California, including San Francisco County. Defendants have marketed, promoted, distributed, and sold SeroVital in California and Defendants have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through their promotion, sales, distribution and marketing within this State, including this

1  District, to render the exercise of jurisdiction by this Court permissible.

2      7.    Venue is proper in this Court pursuant to 28 U.S.C. §§1391 (a) and (b)

3  because a substantial part of the events or omissions giving rise to Plaintiff's claims

4  occurred while she resided in this judicial district. Venue is also proper under 18

5  U.S.C. §1965(a) because Defendants transact substantial business in this District.

6                                    **PARTIES**

7      8.    Plaintiff Serena Kwan is a citizen of California and resides in San

8  Francisco, California.  In or around May 2014, Plaintiff purchased one box of

9  SeroVital online from SanMedica (serovital.com).  Prior to purchasing the Product,

10 Plaintiff was exposed to and saw an advertisement in Shape magazine promoting

11 the Product as having the ability to increase HGH level by 682% resulting in

12 numerous health benefits, such as a more youthful appearance, increased energy,

13 and faster metabolism and also recalls having heard about the Product from the Dr.

14 Oz Show.  After being exposed to these advertisements, Plaintiff Kwan went online

15 to purchase the Product.   While on the website, Plaintiff Kwan read the

16 representations regarding the Product, including those representations appearing on

17 the Product label, which reaffirmed the claims she saw in the magazine

18 advertisement – that the Product is "clinically tested" to provide a "682% mean

19 increase in HGH levels," which is associated with "youthful skin integrity, lean

20 musculature, elevated energy production, [and] adipose tissue distribution."

21 Relying on these claims, Plaintiff Kwan purchased the Product.  The SeroVital

22 product Plaintiff purchased has not been clinically tested to provide the represented

23 "youthful skin integrity, lean musculature, elevated energy production, [and]

24 adipose tissue distribution" and the sole study on which the "682% MEAN

25 INCREASE IN HGH LEVELS" representation is based does not constitute credible

26 scientific support for the claim.  In fact, there is absolutely no support from any

27 credible scientific source that any of the ingredients in SeroVital, alone or in

28

combination, in the dosages in the Product, provide the represented growth hormone benefits. As a result, Plaintiff suffered injury in fact and lost money. Had Plaintiff known the truth about Defendants' misrepresentations and omissions, she would not have purchased SeroVital.

9.     Defendant SanMedica International, LLC is an entity organized and existing under the laws of Utah with its principal place of business at 5742 West Harold Gatty Drive, Salt Lake City, Utah, 84116. SanMedica manufactures, distributes, markets and sells SeroVital to consumers nationwide and created the deceptive growth hormone benefit representations, which it caused to be disseminated to consumers nationwide, including in California.

10.    Defendant Sierra Research Group, LLC is a Utah limited liability company with its principal place of business at 5742 West Harold Gatty Drive, Salt Lake City, Utah, 84116. Sierra Research Group developed the proprietary amino acid compound; licensed it to SanMedica to manufacture, market and sell under the brand name SeroVital; and created the deceptive growth hormone benefit representations, which it caused to be disseminated to consumers nationwide, including in California.

11.    Plaintiff is informed and believes, and thus alleges, that at all times herein mentioned, each of the Defendants was the agent, employee, representative, partner, joint venturer, and/or alter ego of the other Defendant and, in doing the things alleged herein, was acting within the course and scope of such agency, employment, representation, on behalf of such partnership or joint venture, and/or as such alter ego, with the authority, permission, consent, and/or ratification of the other Defendant.

## FACTUAL ALLEGATIONS

*SeroVital*

12.    SeroVital is sold online and at third-party retailers. It is marketed as a

product that purportedly raises the body's natural levels of human growth hormone, unlike synthetic HGH injections. A 120 count bottle of SeroVital retails for approximately $99.00.

13.    Since the Product's launch, Defendants have consistently conveyed the message to consumers throughout the United States, including California, that SeroVital is "CLINICALLY TESTED" to provide a "682% MEAN INCREASE IN HGH LEVELS" which is associated with "youthful skin integrity, lean musculature, elevated energy production, [and] adipose tissue distribution." Defendants' growth hormone benefit representations are false, misleading and deceptive.

14.    The sole study purportedly supporting Defendants' HGH benefit representations does not test for "youthful skin integrity, lean musculature, elevated energy production, [and] adipose tissue distribution." The study tests only HGH levels, and even then is riddled with so many flaws that it is completely unreliable. Among other shortcomings, the test subjects' baseline growth hormone levels were much lower than the placebo group at the beginning of the test. Because the test group's HGH levels were so low, it would be expected that they would rise more than the placebo group and any result showing this would have been due to the imbalance between the two groups rather than SeroVital. There were no apparent adjustments made to correct for this imbalance. Further, and significantly, Defendants falsely represent that the study results demonstrated a 682% mean increase in HGH levels. Even if a 682% mean increase in HGH levels was accurately reported despite the multitude of study design flaws, the 682% only represents a within-group result that does not account for the statistical significance of the comparative placebo results and, thereby, necessarily attributes inflated results to SeroVital.

15.    The SeroVital study results were also flawed due to other confounding

Class Action Complaint

factors for which no controls were put into place by the researchers including, but not limited to, (1) failing to control for the amount of exercise that each subject engaged in, when exercise is known to be a potent stimulator of growth hormones, and (2) failing to control the time of day the placebo and SeroVital blood samples were taken, when it is known that growth hormone is released by the pituitary gland in bursts.  If the blood samples were taken at different times of the day when the placebo and SeroVital supplement were ingested, SeroVital ingestion may well have been at those times that growth hormone was being naturally secreted by the anterior pituitary gland; and, in contrast, the placebo ingestion could have been at the time of the day when growth hormone levels were being lowered naturally. Thus, no confidence can be placed on the results without knowing the times of the day when the samples were taken, which the study tellingly omits.

16.     In addition, Defendants do not rely on a study **report** of the type that would be accepted by any credible, peer-reviewed scientific journal.   Rather, Defendants rely on a published study ***abstract*** and, even then, the "abstract" published on Defendants' web site materially enhances what is stated in the published abstract.  Moreover, published abstracts – as opposed to reports – are not peer-reviewed and are not relied on by the scientific community unless subsequently published in a full final report in a peer reviewed journal.   The SeroVital study abstract also does not identify who funded the study – a strong indicator of potential bias.

17.     Further, although the study abstract reports results of 16 study participants, there is no mention of the total number of participants enrolled in the study.  Thus, there is no way to determine whether these 16 participants represent the whole study or whether data was improperly mined to arrive at a desired result. And, no mention is made of what statistical technique was used to analyze the data such that the results cannot be independently confirmed.  Finally, and significantly,

Class Action Complaint

Defendants fail to accurately represent the actual study abstract on their website. Defendants falsely represent that the SeroVital study was double-blinded – one indicator of a high quality study – when the published study abstract does not indicate that it was double-blinded – a fact, that if it exists, is routinely mentioned. For all these reasons, and others, the SeroVital study upon which Defendants rely is not competent and reliable evidence of a "682% MEAN INCREASE IN HGH LEVELS" and it is absolutely not evidence of the "associated" benefits it did not even test.

18.    In addition to the growth hormone benefit misrepresentations, Defendants omit the following material information: there is absolutely no credible scientific evidence that the ingredients in SeroVital, alone or in combination, in the dosages in the Product, provide the represented HGH benefits to anyone.  Indeed, the FTC's stated position is that there is "no reliable evidence to support the claim that these 'wannabe' products have the same effect as prescription HGH." FTC, Anti-Aging Products, *available at* http://www.consumer.ftc.gov/articles/0118-anti-aging-products (prescription HGH is given via an injection).

19.    The popularity of HGH was the result of a New England Journal of Medicine articles published in 1990s that reported positive results from injection HGH.  As a result, pricey HGH clinics sprung up, charging upwards of $1500 per day for HGH injections even though the FDA has not approved HGH injections for anti-aging.

20.    As for non-injectable HGH, the New England Journal of Medicine published a follow-up editorial about "imposter" HGH products in 2003, warning, "If people are induced to buy a 'human growth hormone releaser' on the basis of research published in the Journal, they are being misled."

21.    The FDA has also stated that it is unaware of any reliable evidence to support anti-aging claims for over-the-counter pills and sprays that supposedly

Class Action Complaint

contain HGH and the Agency has not approved any such products for anti-aging or any other purpose.

22.    Each and every consumer who purchases SeroVital is exposed to Defendants' deceptive growth hormone benefit representations because they appear prominently and conspicuously on the front of each box as follows:



*See* Exhibit A for a copy of the complete label.

***The Impact of Defendants' Wrongful Conduct***

23.    Even though the sole study Defendants rely upon to support their "CLINICALLY TESTED" growth hormone benefit representation does not provide credible scientific support for the "682% MEAN INCREASE IN HGH LEVELS," and does not even test the represented associated "youthful skin integrity, lean musculature, elevated energy production, [and] adipose tissue distribution," Defendants continue to unequivocally convey through their advertising and labeling

that it does.  They continue to make these growth hormone benefit representations even though there is absolutely no credible scientific evidence that the SeroVital ingredients, alone or in combination, in the dosages found in the Product, provide the represented growth hormone benefits to anyone.

24.    As the manufacturers and distributors of SeroVital, Defendants possess specialized knowledge regarding the content and effects of the ingredients contained in SeroVital and are in a superior position to learn of the effects—and have learned of the effects—SeroVital has on consumers.

25.    Specifically, Defendants knew or should have known, but failed to disclose, that the sole purported clinical study on which they rely does not provide credible support for the "682% MEAN INCREASE IN HGH LEVELS;" does not even test the represented associated "youthful skin integrity, lean musculature, elevated energy production, [and] adipose tissue distribution;" and there is absolutely no credible scientific evidence that the SeroVital ingredients, alone or in combination, in the dosages found in the Product, provide the represented growth hormone benefits.

26.    Plaintiff and Class members have been and will continue to be deceived or misled by Defendants' deceptive HGH benefit representations. Plaintiff purchased the Product during the Class period and in doing so, read and considered the SeroVital labeling and packaging and based her decision to buy the Product on the HGH benefit representations.    Defendants' HGH benefit representations were a material factor in influencing Plaintiff's decision to purchase the Product.  Plaintiff would not have purchased the Product had she known that Defendants' HGH benefit representations were false and misleading.

27.    As a result, Plaintiff and the Class members have been damaged in their purchases of the Product and have been deceived into purchasing a Product that they believed, based on Defendants' representations, was clinically tested to

increase HGH levels by a mean of 682% and lead to youthful skin integrity, lean musculature, elevated energy production, and adipose tissue distribution, when, in fact, there is no credible scientific support that the ingredients in SeroVital, alone or in combination, in the dosages in the Product, provide the represented HGH benefits to anyone.

28.     Defendants, by contrast, have reaped enormous profits from their false marketing and sale of SeroVital. Defendants charge a substantial premium for SeroVital over other HGH supplements that do not promise a specific HGH level and associated benefits—let alone a mean HGH increase of 682%.

## CLASS DEFINITION AND ALLEGATIONS

29.     Plaintiff brings this action on behalf of herself and all other similarly situated Class members pursuant to Rule 23(a), b(2) and b(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendants for violations of California state laws and/or similar laws in other states:

> **Multi-State Class Action**
> All Consumers who, within the applicable statute of limitations period, purchased SeroVital in California and states with similar laws.
>
> Excluded from this class are Defendants and their officers, directors, and employees and those who purchased SeroVital for re-sale.

30.     In the alternative, Plaintiff seeks certification of the following Class:

> **California-Only Class**
> All consumers who, within the applicable statute of limitations period, purchased SeroVital in California.
>
> Excluded from this Class are Defendants and their officers, directors and employees and those who purchased SeroVital for the purpose of re-sale.

31.   ***Numerosity***.   The members of the Class are so numerous that joinder of all members of the Class is impracticable.   Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of SeroVital who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.   However, the proposed Class is ascertainable.

32.   ***Existence and Predominance of Common Questions of Law and Fact***.   This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.   These common legal and factual questions include, but are not limited to, the following:

(a)   whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

(b)   whether Defendants' alleged conduct violates public policy;

(c)   whether the alleged conduct constitutes violations of the laws asserted;

(d)   whether Defendants engaged in false or misleading advertising; and

(e)   whether Plaintiff and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

33.   ***Typicality***.   Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above and were subject to Defendants' deceptive HGH benefit representations that accompanied each and every box of SeroVital. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

34.   ***Adequacy of Representation***.   Plaintiff will fairly and adequately protect the interests of the members of the Class.   Plaintiff has retained counsel

experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

35.   *Superiority*.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants.  It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

36.   Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described, and requiring Defendants to provide full restitution to Plaintiff and Class members.

37.   Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and Class members.  Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

38.    Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

**COUNT I**
**Violation of Business & Professions Code §17200,** *et seq.*
**(Applicable to the Multi-State or California-only Class)**

39.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

40.    Plaintiff brings this claim individually and on behalf of the Class.

41.    As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendants' conduct because she purchased SeroVital in reliance on Defendants' claim that the Product was clinically tested to increase HGH levels by a mean of 682% and would lead to youthful skin integrity, lean musculature, elevated energy production, and adipose tissue distribution when, in fact, there is no credible scientific support that the ingredients in SeroVital, alone or in combination, in the dosages in the Product, provide the represented benefits to anyone.

42.    The Unfair Competition Law, Business & Professions Code §17200, *et seq.* ("UCL"), and similar laws in other states, prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.

43.    In the course of conducting business, Defendants committed unlawful business practices by, *inter alia*, making the HGH benefit representations (which also constitutes advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16) and Business & Professions Code §§17200, et seq., 17500, et seq., and the common law. Plaintiff and the Class

reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

44.    In the course of conducting business, Defendants committed "unfair" business practices by, *inter alia*, making the HGH benefit representations (which also constitutes advertising within the meaning of §17200) and omissions of material facts regarding SeroVital in their advertising campaign, including the Product's packaging, as set forth more fully herein. There is no societal benefit from false advertising, only harm. Plaintiff and other Class members paid for HGH benefits supported by clinical testing, which they did not receive. While Plaintiff and Class members were harmed, Defendants were unjustly enriched by their false representations and omissions.  Because the utility of Defendants' conduct (zero) is outweighed by the gravity of the harm Plaintiff and Class members suffered, Defendants' conduct is "unfair" having offended an established public policy. Further, Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

45.    Further, as stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth–in–advertising laws resulting in harm to consumers. Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, et seq.

46.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

47.    Business & Professions Code §17200, et seq., also prohibits any "fraudulent business act or practice."

48.    In the course of conducting business, Defendants committed "fraudulent business acts or practices" by, *inter alia*, making the HGH benefit

Class Action Complaint

representations (which also constitutes advertising within the meaning of §17200) and omissions of material facts regarding SeroVital in their advertising campaign, including the Product's packaging, as set forth more fully herein.

49.     Defendants misrepresented on each and every Product package that the Product is "CLINICALLY TESTED" to provide a "682% MEAN INCREASE IN HGH LEVELS" associated with "youthful skin integrity, lean musculature, elevated energy production, [and] adipose tissue distribution" when, in fact, the clinically tested representation is false and there is absolutely no credible scientific evidence that the SeroVital ingredients, alone or in combination, in the dosages found in the Product, provide the represented growth hormone benefits.

50.     Defendants' actions, claims, omissions and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, et seq.

51.     Plaintiff and other members of the Class have in fact been deceived as a result of their reliance on Defendants' material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and other members of the Class who each purchased Defendants' SeroVital product.  Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

52.     Defendants knew, or should have known, that their material representations and omissions would be likely to deceive the consuming public and result in consumers purchasing SeroVital and, indeed, intended to deceive consumers.

53.     As a result of their deception, Defendants have been able to reap unjust revenue and profit.

54.     Unless restrained and enjoined, Defendants will continue to engage in

the above-described conduct. Accordingly, injunctive relief is appropriate

55.     Plaintiff, on behalf of herself, all others similarly situated, and the general public, seeks restitution of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

**COUNT II**
**Violations of the Consumers Legal Remedies Act –**
**Civil Code §1750 *et seq.***
**(Applicable to the Multi-State or California-only Class)**

56.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

57.     Plaintiff brings this claim individually and on behalf of the Class.

58.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act") and similar laws in other states.

59.     Plaintiff is a consumer as defined by California Civil Code §1761(d). Defendants' SeroVital is a "good" within the meaning of the Act.

60.     Defendants  violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of SeroVital:

(5)     Representing that [SeroVital has] . . .  approval, characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .

*     *     *

(7)     Representing that [SeroVital is] of a particular standard, quality or

1    grade . . . if [it is] of another.

2                              *      *      *

3    (9)    Advertising goods . . . with intent not to sell them as advertised.

4                              *      *      *

5    (16)   Representing that [SeroVital has] been supplied in accordance with a

6           previous representation when [it has] not.

7        61.    Defendants violated the Act by representing and failing to disclose

8    material facts on the SeroVital labeling and packaging and associated advertising,

9    as described above, when they knew, or should have known, that the

10   representations were false and misleading and that the omissions were of material

11   facts they were obligated to disclose.

12       62.    Pursuant to California Civil Code §1782(d), Plaintiff and the Class

13   seek a Court order enjoining the above-described wrongful acts and practices of

14   Defendants and for restitution and disgorgement.

15       63.    Pursuant to §1782 of the Act, Plaintiff notified Defendants in writing

16   by certified mail of the particular violations of §1770 of the Act and demanded that

17   Defendants rectify the problems associated with the actions detailed above and give

18   notice to all affected consumers of Defendants' intent to so act.  Copies of the

19   letters are attached hereto as Exhibit B.

20       64.    If Defendants fail to rectify or agree to rectify the problems associated

21   with the actions detailed above and give notice to all affected consumers within 30

22   days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend

23   this Complaint to add claims for actual, punitive and statutory damages, as

24   appropriate.

25       65.    Defendants' conduct is fraudulent, wanton and malicious.

26       66.    Pursuant to §1780(d) of the Act, attached hereto as Exhibit C is the

27   affidavit showing that this action has been commenced in the proper forum.

28

- 18 -
Class Action Complaint

1

## PRAYER FOR RELIEF

2

Wherefore, Plaintiff prays for a judgment:

3

      A.     Certifying the Class as requested herein;

4

      B.     Awarding restitution and disgorgement of Defendants' revenues to

5

Plaintiff and the proposed Class members;

6

      C.     Awarding injunctive relief as permitted by law or equity, including:

7

enjoining Defendants from continuing the unlawful practices as set forth herein;

8

      D.     Ordering Defendants to engage in a corrective advertising

9

campaign;

10

      E.     Awarding attorneys' fees and costs; and

11

      F.     Providing such further relief as may be just and proper.

12

## DEMAND FOR JURY TRIAL

13

     Plaintiff hereby demands a trial of her claims by jury to the extent authorized

14

by law.

15

Dated: July 21, 2014          BONNETT, FAIRBOURN, FRIEDMAN

16

                        & BALINT, P.C.

17

                 */s/ Patricia N. Syverson*

18

                 Elaine A. Ryan (*To be Admitted Pro Hac Vice*)
Patricia N. Syverson (203111)

19

                 Lindsey M. Gomez-Gray (*To be Admitted Pro Hac Vice*)

20

                 2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016

21

                 eryan@bffb.com
psyverson@bffb.com

22

                 lgomez-gray@bffb.com
Telephone: (602) 274-1100

23

                 BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.

24

                 Manfred P. Muecke (222893)

25

                 600 W. Broadway, Suite 900
San Diego, California 92101

26

                 mmuecke@bffb.com
Telephone: (619) 756-7748

27

                 STEWART M. WELTMAN, LLC

28

1            Stewart M. Weltman (*To be Admitted Pro Hac Vice*)

2            53 W. Jackson Suite 364
Chicago, IL 60604

3            sweltman@weltmanlawfirm.com
Telephone:  (312) 588-5033

4            (Of Counsel Levin Fishbein Sedran & Berman)

5            Attorneys for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28