UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA KWAN,<br><br>              Plaintiff,<br><br>       v.<br><br>SANMEDICA INTERNATIONAL, LLC,<br><br>              Defendant. | Case No. 14-cv-03287-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 43 |

## INTRODUCTION

This is an action in diversity for damages and equitable relief by Plaintiff Serena Kwan ("Plaintiff"), as an individual and on behalf of all others similarly situated, against Defendant SanMedica International, LLC ("Defendant"), the manufacturer of SeroVital, an over-the-counter supplement. Plaintiff alleges two claims for relief: violation of California's Unfair Competition law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; and violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq. Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 43. Plaintiff filed an Opposition (Dkt. No. 50) and Defendant filed a Reply (Dkt. No. 55). The Court finds this motion suitable for disposition without oral argument and VACATES the March 12, 2015 hearing. Civil L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Defendant's Motion for the reasons set forth below.

## BACKGROUND

The following allegations are drawn from Plaintiff's Second Amended Complaint ("SAC"). Dkt. No. 42. Defendant manufactures, markets, sells, or distributes SeroVital, an over-the-counter supplement marketed to boost human growth hormone ("HGH"). SAC ¶ 1. In its

nationwide marketing campaign, Defendant has made the following marketing representations:

> (1) "It is clear that Growth Hormone has been associated with wrinkle reduction, decreased body fat, increased lean muscle mass, stronger bones, improved mood, heightened sex drive, and making users look and feel decades – not years, but DECADES – younger";
> (2) "peak growth hormone levels" are "associated with: youthful skin integrity, lean musculature, elevated energy production, [and] adipose tissue distribution"; and
> (3) that SeroVital is clinically tested to boost human growth hormone ("HGH") by a mean of 682% (hereafter the "682% HGH increase representation").

*Id.* The SAC separates these associated benefit representations into two separate categories: (1) the wrinkle reduction, stronger bones, improved mood, heightened sex drive, making users look and feel decades younger, youthful skin integrity and elevated energy production representations are referred to as the "fountain of youth representations"; and (2) the decreased body fat, increased lean muscle mass, lean musculature and adipose tissue distribution are referred to as the "body composition representations." *Id.* ¶¶ 2-3. Plaintiff contends that these representations are either false, misleading, deceptive, or all three. *Id.* ¶ 2.

Plaintiff alleges that she saw an advertisement for SeroVital in Shape magazine, which promoted it as having the ability to increase HGH levels by 682% and that peak HGH levels are "clearly associated" with the fountain of youth benefits. *Id.* ¶ 26. In May of 2014, Plaintiff went to Defendant's website (serovital.com) to purchase the product, and while browsing the website read representations confirming the information contained in the marketing to which she had previously been exposed. *Id.* Plaintiff purchased one box of SeroVital based upon those representations. *Id.* If she had known that SeroVital was being unlawfully sold and that it was not proven to provide the represented benefits, she would not have purchased it. *Id.* ¶¶ 26, 52.

Plaintiff represents a class of individuals who, in reliance upon Defendant's claims, purchased SeroVital. On July 21, 2014, Plaintiff filed suit in this matter. Dkt. No. 1. On August 27, 2014, Plaintiff filed a First Amended Complaint ("FAC"), in which she alleged two causes of action: (1) violation of the UCL; and (2) violation of the CLRA. Dkt. No. 13. Defendant moved to dismiss the FAC, arguing that Plaintiff brought only substantiation claims, for which there exists no available private right of action, and that even if Plaintiff's claims were construed to be

1  something other than substantiation claims, she failed to demonstrate that Defendant's claims
2  regarding SeroVital were false. Dkt. No. 21-1. The Court agreed and granted Defendant's motion
3  on October 30, 2014. *Order re: Mot. to Dismiss*, Dkt. No. 39. The Court granted Plaintiff leave
4  to amend, but only if she could allege facts from which the Court could conclude that Defendant's
5  advertising representations were false. *Id.* at 7. The Court warned Plaintiff that it would not be
6  enough to attack the methodology of Defendant's study; "instead, she must allege facts
7  affirmatively disproving Defendant's claims." *Id.* The Court identified three ways she could
8  accomplish this:

> Plaintiff could allege that one or more of the authorities alluded to actually studied or tested the formula SeroVital contains and found that it does not produce a 682% mean increase in HGH levels, or that Plaintiff herself did not experience such an increase when using the product, or that a study exists somewhere demonstrating that a 682% increase is categorically impossible to achieve in an over-the-counter pill.

*Id.*

Plaintiff filed her SAC on December 1, 2014. In addition to her previous allegations, she now refers to the top of the front of SeroVital's label, which states "It is clear that "Growth Hormone has been associated with wrinkle reduction, decreased body fat, increased lean muscle mass, stronger bones, improved mood, heightened sex drive, and making users look and feel decades – not years, but DECADES – younger." SAC ¶ 2. Plaintiff alleges this statement is categorically false with respect to wrinkle reduction, stronger bones, improved mood, heightened sex drive and the fountain of youth representations, because it is not "clear" that growth hormone has been associated with any of these benefits. *Id.* Plaintiff further alleges that there are no studies demonstrating that the SeroVital ingredients, alone or in combination, provide any of the fountain of youth represented benefits. *Id.* Plaintiff also points to Defendant's statement at the bottom of the front of the label – "PEAK GROWTH HORMONE LEVELS ASSOCIATED WITH: Youthful skin integrity [and] Elevated Energy Production." *Id.* ¶ 3. She alleges this is categorically false because "[p]eak growth hormone levels have not been associated with these benefits based upon any reliable scientific evidence." *Id.*

In addition, Plaintiff adds allegations regarding Defendant's statement that SeroVital is

3

"Clinically Tested." *Id.* ¶¶ 4-5. She alleges that a reasonable consumer reading this would interpret "Clinically Tested" to mean "clinically proven," and that SeroVital had been clinically tested to provide all of the benefits set forth on the front of the label. *Id.* ¶ 5. Plaintiff contends that "[w]hen a manufacturer represents that its product has been clinically tested, as Defendant does on the front of the SeroVital label, the reasonable consumer rightfully believes that the defendant has clinically tested the product and has adequate scientific substantiation for the claims linked to the clinically tested representation." *Id.* ¶ 6.

The SAC also includes allegations regarding the study on which the SeroVital advertising claims rely. Plaintiff refers to a "purported supporting summary of a 'study' Defendant includes on its website," alleging that it "is so riddled with flaws that it cannot be relied upon to draw efficacy conclusions." *Id.* ¶ 4. She alleges that it "is not a study report but a summary that would not be accepted by any credible, peer-reviewed scientific journal," that "[t]here are no authors identified with regard to the study summarized on Defendant's web site, another indicator that the report on the web site is not to be relied upon," and "the summary of the study's results reveal numerous flaws that would lead experts in the area to conclude that this study is not credible and cannot be relied upon to base efficacy conclusions." *Id.* ¶¶ 32-34.

Defendant now moves to dismiss the SAC, arguing that it "is again based entirely on allegations for which there is simply no private right of action—allegations concerning a purported lack of scientific substantiation for the advertising claims related to [SeroVital]."[1] Mem. at 4, Dkt. No. 46. Defendant argues that the SAC is fatally deficient, because it does not contain allegations based on testing, scientific literature, or anecdotal evidence claiming that the advertisements are false or misleading. *Id.* at 5. While the SAC contains allegations that

---

[1] Defendant ask the Court to take judicial notice of various documents in support of its Motion. Dkt. No. 44. Plaintiff opposes Defendant's request. Dkt. No. 51. Although in general the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion, *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001), the Court may, in some circumstances, consider evidence upon which the Complaint necessarily relies, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, the Court does not rely on any of the materials for which judicial notice is sought, and therefore Defendant's Motion is DENIED AS MOOT.

4

1 Defendant's advertising claims are based on an underlying study that is flawed, Defendant
2 contends that these allegations cannot form the basis for actions under the UCL or CLRA because
3 they "are lack of substantiation claims—they all attack the scientific support for [SeroVital's]
4 claims without citing to or alleging that there are studies or other scientific evidence that
5 contradict the scientific support on which Defendant substantiates the advertising claims." *Id.* at
6 6. Even if Plaintiff could bring her claims, Defendant argues they fail as a matter of law because
7 the SAC fails to demonstrate that Defendant's claims regarding SeroVital are false. *Id.* at 13.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652

5

F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted).

## DISCUSSION

As in its previous motion, Defendant argues that Plaintiff's claims must be dismissed because they are based entirely upon substantiation allegations for which there exists no private right of action.[2]

In response, Plaintiff argues that her falsity claims are not based on a lack of substantiation theory, but instead allege that Defendant's representations are false because there is no clinical proof supporting any of the represented benefits on the label, and the summary of a study Defendant includes on its website cannot serve as this clinical proof because "it is so riddled with flaws that it cannot be relied on to draw efficacy conclusions." Opp'n at 1. Plaintiff also argues that the SAC alleges two additional claims: (1) that Defendant's marketing and sale of SeroVital are unlawful under the UCL; and (2) that Defendant is liable for engaging in misleading representations because it lacks substantiation for its claims. *Id.* at 3.

---

[2] Defendant also appears to raise a standing argument, arguing that Plaintiff fails to allege that she "even took the product in the first place." Mot. at 11. "However, the sale itself caused an economic injury-in-fact, and therefore this Court has standing to adjudicate the controversy." *Cortina v. Wal-Mart, Inc.*, 2015 WL 260913, at *2 (S.D. Cal. Jan. 20, 2015) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)).

6

### A. False Advertising

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. The CLRA prohibits any "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ." Cal. Civ. Code § 1770. "In an action for false advertising under the UCL and CLRA, the plaintiff 'bears the burden of proving the defendant's advertising claim is false or misleading.'" *Stanley v. Bayer Healthcare LLC*, 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012) (quoting *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1342 (2003)). Individuals may not bring suit under the UCL or the CLRA alleging only that advertising claims lack substantiation. *Id.* Instead, that right is reserved to "the Director of Consumer Affairs, the Attorney General, any city attorney, or any district attorney . . . ." Cal. Bus. & Prof. Code § 17508. Therefore, because no private right of action exists for a substantiation claim, private litigants may only bring claims under these sections for false or misleading advertising, and must provide adequate factual bases for such allegations. *Fraker v. Bayer Corp.*, 2009 WL 5865678, at *8 (E.D. Cal. Oct. 6, 2009).

In the false advertising context, an advertising claim is false if it has "actually been disproved," that is, if the plaintiff can point to evidence that directly conflicts with the claim. *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1, 2012). By contrast, an advertising claim that merely lacks evidentiary support is said to be unsubstantiated. *Id.* ("There is a difference, intuitively, between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved. In common usage, we might say that both are 'unsubstantiated,' but the caselaw (and common sense) imply that in the context of a false advertising lawsuit an 'unsubstantiated' claim is only the former.").

In her SAC, Plaintiff alleges that Defendant's advertising for SeroVital is false and misleading because: (1) there are no studies that support Defendant's representations, and Defendant lacks any credible scientific substantiation for these representations; (2) the only studies associating HGH with Defendant's representations involve prescription drugs and HGH that was

7

injected intravenously, not orally administered; (3) the supporting summary of a study Defendant includes on its website is "riddled with flaws," including that it is written by an unknown author and that it is not a study report but a summary that would not be accepted by any credible, peer-reviewed scientific journal; (4) a reasonable consumer would interpret "clinically tested" as meaning "clinically proven," and such a consumer rightfully believes that Defendant has clinically tested the product and has the scientific substantiation to back up its claims as to all the benefits on the front of the label; and (5) experts in HGH deem the only credible scientific evidence to substantiate human health benefit claims is evidence from high quality randomized controlled clinical trials, and no such trials exist to substantiate Defendant's claims. SAC ¶¶ 2, 4-6, 8-9, 13-14, 32.

1. Defendant's Summary

The Court previously addressed Plaintiff's allegations regarding the flaws in the study Defendant summarizes and the lack of any other study supporting its representations. *Order re: Mot. to Dismiss* at 5 ("Plaintiff's argument that Defendant claims support for its representations, when there in fact is no such support, perfectly describes a substantiation claim.") (citing *Eckler*, 2012 WL 5382218, at *3). Once again, the SAC cites no study that disproves Defendant's claims. The SAC claims that: "Plaintiff, through her counsel and her counsel's consulting experts, has conducted a comprehensive search of the published literature on the ingredients specific to the Defendant's Product." SAC ¶ 41. Based on this search, Plaintiff alleges that "[n]o published reports . . . were found supportive of the represented 682% HGH increase, 'fountain of youth' or 'body composition' benefit representations." *Id.* However, Plaintiff still does not allege that a study exists showing that these benefits are categorically impossible to achieve, or that one or more authorities studied or tested SeroVital's formulaand found that it does not produce the results Defendant claims.

Thus, as before, the Court finds that Plaintiff's allegations regarding the study Defendant summarizes constitute a substantiation claim. Courts have repeatedly held that actions based on such allegations are not actionable by private individuals. *Engel v. Novex Biotech LLC*, 2014 WL 5794608, at *3 (N.D. Cal. Nov. 6, 2014); *Johns v. Bayer Corp.*, 2013 WL 1498965 *36 (S.D. Cal.

8

Apr. 10, 2013) ("[I]n the absence of affirmative scientific evidence . . . that proves that zinc and vitamin E did not support prostate health, the strength of Bayer's evidence is irrelevant and Plaintiffs claims are based on 'lack of substantiation' rather than proof of falsity."); *Stanley*, 2012 WL 1132920, at *4 ("alleged lack of substantiation does not render claims false and misleading under the UCL or CLRA."); *Fraker*, 2009 WL 5865687, at *8 (granting motion to dismiss where the plaintiff failed to allege that "Defendant's advertising claims with respect to Product are actually false; not simply that they are not backed up by scientific evidence."). Accordingly, Plaintiff's allegations that Defendant's claims are not substantiated by the supporting study, standing alone, cannot serve as a basis to assert claims under either the UCL or CLRA.

However, the Court must look at the SAC as a whole to determine whether Plaintiff alleges only a substantiation claim. *See Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013). "A claim can survive a lack of substantiation challenge by, for example, alleging studies showing that a defendant's statement is false." *Id.*

2. FTC and FDA

In her FAC, Plaintiff alleged: (1) the Federal Trade Commission ("FTC") has stated that "no reliable evidence" supports that non-prescription products have the same effect as prescription HGH (FAC ¶ 18); (2) the New England Journal of Medicine published an article in the 1990s touting HGH's benefits, and another article in 2003 warning about the potential for misleading consumers (*Id.* ¶¶ 19-20); and (3) the Food & Drug Administration ("FDA") has stated that "it is unaware of any reliable evidence to support anti-aging claims for over-the-counter pills and sprays that supposedly contain HGH" (*Id.* ¶ 21). The Court found that these statements may be relevant to Plaintiff's claims, but they failed to demonstrate that Defendant's advertising claims are false. *Order re: Mot. to Dismiss* at 6. The Court noted that none of the authorities cited actually refer to SeroVital, and that there was no way of knowing whether the alleged statements were made before SeroVital was in testing or on the market. *Id.* at 6-7. For these reasons, the Court granted leave to amend, but only if Plaintiff could allege facts "affirmatively disproving Defendant's claims." *Id.* at 7.

In her SAC, Plaintiff does not mention the New England Journal of Medicine statements,

9

1  but she reproduced her allegations regarding the FDA statement. SAC ¶ 43 ("The FDA has also
2  stated that it is unaware of any reliable evidence to support anti-aging claims for over-the-counter
3  pills and sprays that supposedly contain HGH and it has not approved any such products for anti-
4  aging or any other purpose.") (*compare* FAC ¶ 21). She also reproduced her allegations regarding
5  the FTC statement. SAC ¶ 42 ("Indeed, the FTC's stated position is that with respect to oral, as
6  opposed to injectable/prescription HGH products, there is 'no reliable evidence to support the
7  claim that these 'wannabe' products have the same effect as prescription HGH.'") (*compare* FAC
8  ¶ 18). Unlike the FAC, however, Plaintiffs adds: "This statement is equally valid today, since the
9  science has not changed as evidenced by the fact that this statement is still on the FTC's web site."
10 SAC ¶ 42. Even with this addition, neither the FTC nor the FDA statements disprove Defendant's
11 claims, let alone show that any authority studied or tested SeroVital's formula.

12         In fact, the SAC cites no study that disproves Defendant's claims. Plaintiff argues that
13 Defendant's representations are "categorically false" because "[t]here are no studies showing that
14 any of the ingredients in SeroVital, alone or in combination, provide increases in the HGH levels
15 represented on the packaging." Opp'n at 7. As discussed above, Plaintiff states that her counsel
16 and her counsel's consulting experts conducted a comprehensive search of the published literature
17 on the ingredients specific to SeroVital, but found no published reports that supported Defendant's
18 representations. SAC ¶ 41. However, Plaintiff still does not allege that a study exists showing
19 these benefits are categorically impossible to achieve. Again, in the false advertising context, an
20 advertising claim is false if it has "actually been disproved." *Eckler*, 2012 WL 5382218, at *3.
21 Plaintiff's allegation that Defendant's claim lacks evidentiary support is said to be unsubstantiated.
22 *Id.*

23         3.     Defendant's Use of "Clear"

24         In her FAC, Plaintiff alleged that Defendant's advertising is false because the study did not
25 specifically test for "youthful skin integrity, lean musculature, elevated energy production, [and]
26 adipose tissue distribution," which appears on the bottom of the packaging. FAC ¶ 14. The Court
27 rejected this contention "outright," finding that the SeroVital advertising does not state that the
28 product was clinically tested to produce these results, only that peak growth hormone levels are

10

associated with those benefits. *Order re: Mot. to Dismiss* at 5.  Thus, "it is irrelevant that the study upon which the advertising claims rely did not test for the presence of those benefits, and this alleged deficiency cannot serve as the basis for Plaintiff's false advertising claim." *Id.*

In the SAC, Plaintiff adds allegations of other benefits described on the front of SeroVital's packaging. *See* SAC ¶ 2 ("It is clear that Growth Hormone has been associated with wrinkle reduction, decreased body fat, increased lean muscle mass, stronger bones, improved mood, heightened sex drive, and making users look and feel decades – not years, but DECADES – younger.").  Plaintiff contends that Defendant's use of "it is clear" and "associated with" are categorically false, because it is not "clear" that growth hormone has been associated with any of these benefits, yet these statements "impart the message that the available science establishes that increased HGH levels provide these benefits." *Id.*; Opp'n at 7-8.  She argues that "[t]here are no studies involving oral over-the-counter secretagogues such as SeroVital demonstrating that the SeroVital ingredients, alone or in combination, provide any of the body composition benefits." Opp'n at 7.  However, once again, Plaintiff does not allege that a study exists showing that these benefits are categorically impossible to achieve, or that one or more authorities studied or tested the formula SeroVital contains and found that it does not produce such results.

### 4. Clinically Tested

Plaintiff has also added allegations that "[a] reasonable consumer reading Defendant's SeroVital label as a whole would rightfully interpret 'Clinically Tested' to mean 'clinically proven,'" and "would understand the 'Clinically Tested' representation to mean that SeroVital had been clinically tested to provide all of the benefits set forth on the front of the label."  SAC ¶ 5. Plaintiff notes that the phrase "Clinically Tested" is "in the middle of the label" and "not textually connected to a particular statement on the label nor is it qualified in any manner." *Id.*  She also notes that the study that Defendant summarizes on its web site "did not even test whether SeroVital provided any of the fountain of youth or body composition benefits." *Id.* ¶ 7.  Plaintiff argues that Defendant's use of "Clinically Tested" takes her claim out of the realm of the lack of substantiation cases.  Opp'n at 8.  The Court disagrees.

In its previous Order, the Court addressed Plaintiff's argument that she "does not simply

11

allege that Defendant's growth hormone benefit representations are unsubstantiated; rather Plaintiff alleges that Defendant misrepresents that its growth hormone benefit representations are supported by clinical testing when they are not." *Order re: Mot. to Dismiss* at 5. The Court found that "Plaintiff's argument that Defendant claims support for its representations, when there in fact is no such support, perfectly describes a substantiation claim." *Id.* (citing *Eckler*, 2012 WL 5382218, at *3).

In support of her revised claim, Plaintiff cites to the same cases cited in her prior opposition: *McCrary v. Elations Co., LLC*, 2013 WL 6403073 (C.D. Cal. July 12, 2013); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, (E.D.N.Y. 2013); *Rikos v. Proctor & Gamble Co.*, 782 F. Supp. 2d 522 (S.D. Ohio 2011); *Cabral v. Supple, LLC*, No. 12-00085-MWF, Dkt. No. 29 at 1, 4 (C.D. Cal. July 3, 2012); and *Garcia v. Clarins, et al.*, No. 14-cv-21249, Dkt. No. 16 at 16 (S.D. Fla. Sept. 4, 2014). *See* Opp'n at 8, 10. However, as the Court observed in its prior Order, in those cases the plaintiff was able to demonstrate, with affirmative evidence, that the advertising claims are false in and of themselves. *See Order re: Mot. to Dismiss* at 6 ("The Court therefore rejects Plaintiff's contention that there exists any 'recognized exception' to the rule against private enforcement of substantiation claims"). Plaintiff has failed to provide any such affirmative evidence here, and none of the cases cited by Plaintiff stand for the proposition that she may make an end run around the bar against private substantiation claims by simply alleging that an advertiser's reference to the substantiation itself is misleading.

Further, in the SAC, Plaintiff acknowledges that testing has been performed, but disputes the adequacy of that testing. SAC ¶ 32. If the Court were to permit Plaintiff to proceed on this theory, private litigants could bring substantiation causes of action on advertising claims simply by adding "magic words," tethering the claims to an advertiser's particular substantiation. *See King Bio*, 107 Cal. App. 4th at 1338 (explaining the purpose of the rule as follows: "This limitation prevents undue harassment of advertisers and is the least burdensome method of obtaining substantiation for advertising claims"); *see also* Cal. Bus. & Prof. Code § 17508 (giving power to demand substantiation for advertising only to "the Director of Consumer Affairs, the Attorney General, any city attorney, or any district attorney"). If Plaintiff wishes to bring claims

alleging that Defendant's advertisements are false or misleading, then she must do so based on actual facts showing this, not simply an assertion that Defendant's substantiation is inadequate. *King Bio*, 107 Cal. App. 4th at 1342.

**B.    Misleading and/or Deceptive Advertising**

Regardless of whether the SeroVital claims are provably false, Plaintiff alleges that she can prevail by showing that the challenged representations are deceptive, misleading or both. SAC ¶ 8. She argues that this is a separate and independent claim under the CLRA, and maintains that *King Bio*—the source of the rule of law that lack of substantiation claims do not state a claim—"is either wrongly decided or has been wrongly applied to misleading and deceptive claims." Opp'n at 3. Specifically, Plaintiff notes that the CLRA provides for claims against false, misleading or deceptive representations," and "[r]equiring a plaintiff to establish falsity in order to state a claim for misleading or deceptive representations violates basic principles of statutory construction by rendering the terms 'misleading' and 'deceptive' surplusage." *Id.*  As such, she seeks review of the *King Bio* holding. *Id.*

If the Court were to adopt Plaintiff's proposal, it would not only overturn *King Bio*, but the entire body of law on this issue, including the laws enacted by the California State Legislature. As the Court previously observed, "[i]ndividuals may not bring suit under the UCL or the CLRA alleging only that advertising claims lack substantiation. Instead, that right is reserved to 'the Director of Consumer Affairs, the Attorney General, any city attorney, or any district attorney . . . .'" *Order re: Mot. to Dismiss* at 5 (quoting Cal. Bus. & Prof. Code § 17508 andciting *Stanley v. Bayer Healthcare LLC*, 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012) ("Private individuals may not bring an action demanding substantiation for advertising claims" and "alleged lack of substantiation does not render claims false and misleading under the UCL or CLRA.")). As this rule is both settled and fundamental, the Court declines to overrule the Legislature's explicit exception for cases where advertising is allegedly misleading or deceptive due to lack of substantiation. *See* Cal. Bus. & Prof. Code § 17508 (giving power to demand substantiation for advertising only to "the Director of Consumer Affairs, the Attorney General, any city attorney, or any district attorney"); *see also King Bio*, 107 Cal. App. 4th at 1345-46 ("The Legislature

13

indicated an intent to alter the burden of substantiating advertising claims only with respect to prosecuting authorities").

### C.     Plaintiff's UCL Claim

In her Opposition, Plaintiff argues that she has stated a valid claim under the UCL because "selling SeroVital without the prerequisite competent and reliable scientific evidence/substantiation" is "unlawful." Opp'n at 18.  However, as discussed above, individuals may not bring suit under the UCL or the CLRA alleging only that advertising claims lack substantiation.  Further, unsubstantiated claims are already, by definition, unlawful under section 17508: "It shall be *unlawful* for any person doing business in California and advertising to consumers in California to make any false or misleading advertising claim, including claims that (1) purport to be based on factual, objective, or clinical evidence. . . ." Cal. Bus. & Prof. Code § 17508 (emphasis added).  Thus, as the Legislature has carved out a specific exception limiting the right to bring lack of substantiation claims to prosecuting authorities, private litigants may only bring claims under these sections for false or misleading advertising, and must provide adequate factual bases for such allegations. *Engel*, 2014 WL 5794608, at *2 (citing *Fraker*, 2009 WL 5865678, at *8).  As Plaintiff has failed to show that Defendant's advertising claims have "actually been disproved," her UCL claim must also fail.

## CONCLUSION

Based on the analysis above, Defendant's Motion to Dismiss is **GRANTED**.  As the Court previously provided Plaintiff the opportunity to amend her complaint, and she has once again failed to allege facts from which the Court could conclude that Defendant's advertising representations were false, the case is **DISMISSED WITH PREJUDICE**.  The Clerk of Court shall close the file.

**IT IS SO ORDERED.**

Dated: February 25, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge

14